IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SAMUEL LUJAN,**

      Plaintiff,

vs.                                                   Civ. No. 03-368 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed June 18, 2003. Docket No. 8. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

**I.  PROCEDURAL RECORD**

Plaintiff, Samuel Lujan, filed applications for Social Security disability insurance and Supplemental Security Income on June 23, 2000. Tr. 93-94 and 329-30. He is alleging a disability since June 8, 2000, due to Hepatitis B and C and a heart murmur. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing April 24, 2002. At the hearing, the Plaintiff was represented

by counsel. On November 7, 2002, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant has not engaged in post-onset substantial gainful activity; the claimant's Hepatitis B and C, mitral valve prolapse with regurgitation, and a left knee dysfunction associated with mild degenerative changes are "severe;" the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding his limitations are not totally credible; the claimant has the residual functional capacity ("RFC") to perform the requirements of medium type work; the claimant is able to perform his past relevant work as a janitor and dishwasher; and the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision.   Tr. 24-29.

The ALJ entered his decision on November 7, 2002. Thereafter, the Plaintiff filed a request for review. On February 28, 2003, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 8. The Plaintiff subsequently filed his Complaint for court review of the ALJ's decision on March 24, 2003.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence

supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1)  he is not engaged in substantial gainful employment; 2)  he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3)  his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  Id.

### III.  MEDICAL HISTORY

Plaintiff was born on March 26, 1942 and he is currently 61 years old.  He was a 60 year old individual at the time of the hearing, with a high school education.  Tr. 93, 95.  His past work consists of jobs as a construction worker, janitor and dishwasher.  Tr. 25.

Plaintiff has a long history of alcohol and drug abuse.  He also has a history of multiple prison sentences.  He was released from prison in August of 1999.  Plaintiff has undergone treatment at the

Sixth Street Clinic for methadone maintenance. He testified that he has not had any alcohol since July of 2000 and last used heroin in October of 2000. Tr. 51.

In November of 1999, Plaintiff was diagnosed with Hepatitis B and C. Tr. 194. In December of 1999, Plaintiff was diagnosed with diastolic murmur. Tr. 233. In January of 2000 Plaintiff underwent an echocardiogram which indicated that Plaintiff had a mild mitral valve prolapse with the posterior leaflet with associated 2+ regurgitation. Tr. 229. In February of 2001, Dr. Kathleen Allen prescribed Lisinopril for his mitral valve prolapse. Tr. 260. At that time Dr. Allen also noted that Plaintiff showed signs of deteriorating hepatic function such as jaundice, tough white outer part of the eyeball and increased spider angioma.[1]

Dr. Robert Z. Edwards has treated the Plaintiff for his hepatic function since July of 2000. In completing a questionnaire on March 9, 2001, Dr. Edwards indicated that treatment at this time was supportive and that Plaintiff's medications included Lisinopril and Spirinolactone[2]. He also noted that Plaintiff's condition would require rest breaks during an 8 hour day and that it was unlikely that Plaintiff would be able to work full time. Tr. 246.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred in: 1) not finding that Plaintiff met Listing 5.05; 2) in evaluating Plaintiff's receipt of collateral benefits; 3) misstating the evidence when evaluating Plaintiff's residual functional capacity; 4) evaluating whether Plaintiff can perform his past relevant

---

[1] A spider angioma is a vascular spider composed of small vessels radiating from a central arteriole...seen in persons with liver disease. Dorland's Pocket Medical Dictionary, 23rd ed. (1982).

[2] Spironolactone is indicated for treatment of cirrhosis of the liver when accompanied with edema. Physician's Desk Reference, 53rd ed. (1999).

4

work; and 5) not finding that Plaintiff was disabled as a matter of law.

Listing 5.05.

The listing of impairments describes impairments that are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. §§404.1525(a), 416.925(a). At step three, the ALJ must evaluate whether a claimant meets or equals a listed impairment in Appendix 1 of the regulations. 20 C.F.R. §§404.1520(d), 416.930(d). To meet a listing the claimant must meet all of the specified medical criteria of the particular listing. Sullivan v. Zelbley, 493 U.S. 521, 530 (1990).

Listing 5.05 requires that a claimant have chronic liver disease with serum bilirubin of 2.5 mg. per deciliter (100ml) or greater on repeated examinations for at least five months or confirmation of chronic liver disease by liver biopsy and serum bilirubin of 2.5 mg. per deciliter (100ml) or greater on repeated examinations for at least 3 months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 5.05. The record demonstrates that Plaintiff did not meet this criteria. On July 14, 2000, Plaintiff's bilirubin level was 2.4 mg. Tr. 193. On January 31, 2001, this level improved to 1.7mg. Tr. 234. On November 17, 2001, Plaintiff's bilirubin level was 2.0mg. Tr. 280. Again, on May 16, 2002, Plaintiff's level improved to 1.7mg. Tr. 324.

Moreover, Plaintiff has not established that his impairment equals Listing 5.05. To equal a listing, the Plaintiff's medical finding must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §404.1526(b). The record does not support nor does Plaintiff assert what medical evidence supports a finding of equivalence under Listing 5.05. The ALJ's analysis at step

three is supported by the substantial evidence and the ALJ applied the correct legal standard.

<u>Collateral benefits</u>.

Plaintiff asserts that the ALJ did not consider that Plaintiff was receiving general assistance from the State of New Mexico. However a review of the ALJ's decision demonstrates otherwise. The ALJ expressly considered the fact that Plaintiff was receiving general assistance. Tr 27. He then further correctly stated the law that the findings of other agencies are entitled to weight and must be considered, but are not binding on the Commissioner. <u>Baca v. Dep't. of Health & Human</u> <u>Servs</u>., 5 F.3d 476, 480 (10th Cir. 1993). There are different parties, different evidentiary standards and different bodies of law governing claims for general assistance and social security benefits. NMSA §27-2-7 (Repl. Pampl.). The fact that the Plaintiff receives general assistance is simply evidence which was properly considered by the ALJ.

Plaintiff also asserts that it was error for the ALJ to state that "the records in the file indicate that such benefits are associated with claimant's participation in substance abuse counseling and that he is meeting treatment goals for remaining drug free." Tr. 27. Plaintiff argues that he was found disabled and participation in rehabilitation was a condition of receipt of benefits. Memorandum Brief, p. 8. Throughout the record there are letters from Plaintiff's rehabilitation clinic to the New Mexico Income Support Division stating that the Plaintiff is currently receiving methadone maintenance and counseling. Tr. 250, 251 256 and 290-93. Thus these benefits are "associated" with Plaintiff's participation in a rehabilitation program. Moreover, as the ALJ correctly stated, "general assistance benefits does not translate into entitlement to Social Security Disability Benefits..." Tr. 27. Plaintiff's claim is without merit.

<u>Residual functional capacity</u>.

Plaintiff asserts that the ALJ misstated the evidence in assessing Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ speculated that Plaintiff was working after the date he said he discontinued working and that Plaintiff's discontinuation of work in June of 2000 could have been associated with his drug abuse. Tr. 27.

When the evidence permits varying inferences, as it does in these two matters, the ALJ must choose an inference based on the record as a whole. Tolbert v. Apfel, 106 F. Supp. 2d 1217 (N.Okla. 2000). "The Court will overrule the ALJ's choice of competing inferences only when the ALJ's choice finds no support in the record. Id. There is support in the record for both of these statements.

Plaintiff's treatment notes of August 9, 2000 state that Plaintiff "works on a daily basis without difficulty and overall feels quite well." Tr. 261. Plaintiff asserts that this treatment notation was an error should have stated that Plaintiff "works out on a daily basis." At the administrative hearing, Plaintiff testified that he did not exercise at all. Tr. 46. Moreover, either way, whether Plaintiff was working or working out, this is evidence that supports the ALJ's RFC assessment.

Plaintiff quit working in June of 2000. He testified he was still using heroin until October or November of 2000. Tr. 51. There is no documentation that Plaintiff's condition deteriorated around June of 2000. Tr. 27. Thus, clearly, the record supports the inference that Plaintiff's discontinuation of work could have been associated with his drug abuse.

Reliance on medical records.

The ALJ properly discounted the opinion of Dr. Edwards and correctly relied on the opinion of Dr. Eugene Toner. Dr. Edwards is Plaintiff's treating physician. Unless good cause is shown to the contrary, the Secretary must give substantial weight to the opinion of the Plaintiff's treating

7

physician.  Goatcher v. HHS, 52 F.3d 288 (10th Cir. 1995).  However, the ALJ is not required to give controlling weight to a treating physician's opinion if it is inconsistent with the other substantial evidence in the record.  Castellano v. Sec'y of H.H.S., 26 F.3d 1027, 1029 (10th Cir. 1994).

Dr. Edward opined that it was not likely that Plaintiff was able to work full time.  In discounting Dr. Edward's opinion the ALJ stated that he could not determine the length of treatment relationship between Dr. Edward and the Plaintiff.  This is error as Dr. Edward stated in a questionnaire that he had been treating Plaintiff since July 14, 2000.  However, this is harmless error in that the ALJ correctly discounted Dr. Edward's opinion for other reasons.  Specifically, the ALJ stated that "previous treatment notations indicate that the claimant was doing well and subsequent notations indicate a response to treatment."  Tr. 27.  Moreover, the Court notes that there are few treatment records by Dr. Edwards in the record.

Moreover, the ALJ's reliance on the consultative examination of Dr. Toner is not misplaced.  Plaintiff argues that the ALJ needed a consultative examination by an "internist."  Tr. 27.  The examination was performed by Dr. Toner who is board certified in emergency medicine and his primary speciality is occupational medicine.  Tr. 314 and 326.  Plaintiff argues that Dr. Toner "did not perform the requisite evaluation."  Memorandum, p. 11.  However, the Plaintiff does not say what is missing from the examination or the evaluation nor is it evident what is missing.

Past relevant work.

Plaintiff asserts that the ALJ erred in finding that Plaintiff could perform his past relevant work.  In step four of the analysis the ALJ must: 1) evaluate the Plaintiff's physical and mental RFC; 2) determine the physical and mental demands of the Plaintiff's past relevant work; and 3) compare

the individual's RFC with the demands of his past relevant work. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

As discussed above, the ALJ properly evaluated Plaintiff's RFC in determining whether Plaintiff could return to his past relevant work. The finding that the Plaintiff has the RFC for medium work is supported by the substantial evidence in the record. Specifically, the ALJ properly relied on the few treatment notes of Plaintiff's treating physician, Dr. Edwards. Tr. 27. The notations indicate "that the claimant was doing well and subsequent notations indicate a response to treatment." <u>Id</u>. Moreover, the ALJ properly relied on the consultative evaluation by Dr. Toner finding that the Plaintiff was able to perform "heavy" work activities. Tr. 27. Furthermore, the ALJ properly relied on the testimony of the vocational expert. <u>Winfrey,</u> 92 F.3d at 1025 (At step four a vocational expert may supply information to the ALJ about the demands of the claimant's past relevant work). The limitations argued by the Plaintiff were not found to be supported by the substantial evidence and thus were properly not included in the hypothetical to the vocational expert. <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1341 (10th Cir. 1993).

<u>Disabled as a matter of law</u>.

Plaintiff's final argument that he should be found disabled as a matter of law is also without merit. Plaintiff asserts that with a RFC of sedentary work he would be found disabled pursuant to the Grids. The ALJ found that Plaintiff was assessed with a medium RFC. Moreover, the ALJ decided this case at step four. The Grids are used only at step five. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Thus, again, Plaintiff's argument fails.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Decision is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**